UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RANDAL RITCHIE,

        Plaintiff,

v.                                                Case No. 1:11-CV-530

COLDWATER COMMUNITY SCHOOLS,        HON. GORDON J. QUIST
COLDWATER COMMUNITY SCHOOL
BOARD, SCHOOL BOARD MEMBER
ROBIN IVESON, SUPERINTENDENT OF
SCHOOLS TINA KERR, DAVID DISLER,
and PROFESSIONAL EDUCATIONAL
SERVICES GROUP, LLC,

        Defendants.

_____/

## **OPINION**

    Randal Ritchie was outraged after his daughter, a student at Coldwater Community Schools

(School District), told him that her teacher had pulled or tugged on her hair without permission or

consent, causing her pain.  Ritchie went to the Coldwater Police Department (CPD) to report the

alleged assault and battery.  It appears that the CPD essentially turned the matter over to the School

District, which investigated and found no basis for Ritchie's daughter's allegations.  Not satisfied,

Ritchie sought to vent his frustration with the School District publicly at the Coldwater Community

School Board (School Board) meeting.  The School Board and the School District, Ritchie alleges,

were not very accommodating: during one meeting, he was cut off while trying to address the

School Board; he was intimidated by the threat of arrest from attending another meeting; and, at the

request of School Board members and/or School District employees, the CPD forcibly removed him

from two other meetings. To boot, the School District restricted Ritchie's access to school property. Fed up, Ritchie filed the instant lawsuit against Defendants for violating his rights.

In his eleven-count Second Amended Complaint – the currently operative pleading – Ritchie has sued the School District; the School Board; Robin Iveson, the School Board President; Tina Kerr, the Superintendent of the School District; David Disler, the former interim Superintendent of the School District; and Professional Educational Services Group, LLC. (PESG), a private company that employed Disler.[1]  In Counts I through IV, Ritchie alleges claims under 42 U.S.C. § 1983 for violations of his First Amendment rights in connection with various School Board meetings. In Count V, Ritchie seeks injunctive relief based on the violations alleged in Counts I through IV. Count VII alleges an additional claim under § 1983 for violation of Ritchie's due process rights for restricting his access to school property.  Counts VI and VIII-X allege various state law claims for violation of the Michigan Open Meetings Act (OMA), M.C.L. § 15.261, *et seq.*, malicious prosecution, and violation of Article 1 of the Michigan Constitution.  Finally, Count XI, which is not at issue in the instant motions, alleges a claim against PESG for vicarious liability based on Disler's actions.

Defendants (excluding PESG) have moved for dismissal of all claims pursuant to Rules 12(b)(1), 12(b)(6), 12(c), and 12(h)(3).  Although Ritchie and Defendants have requested oral argument, the motions have been *thoroughly* briefed and the Court concludes that oral argument would not further assist it in resolving the motions.  For the following reasons, the Court will grant Defendants' motions in part and deny them in part.

---

[1] Ritchie also sued various current and former members of the School Board, who have been dismissed by stipulation of the parties.

# I. MOTION STANDARDS

Defendants move for dismissal pursuant to Rules 12(b)(1), 12(b)(6), 12(c), and 12(h)(3) of the Federal Rules of Civil Procedure.[2]

A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010). Rule 12(b)(1) motions may be brought either as a facial attack or a factual attack. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)). A facial attack questions the sufficiency of the allegations in the pleading. *Id.* In a factual attack, "the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When reviewing a facial attack, a court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, however, there is no presumption that the factual allegations of the complaint are true. *Id.* In their instant motion to dismiss Ritchie's federal claims, Defendants fail to present any material outside of the pleadings for a factual attack. Therefore, the Court construes Defendants' motion as a facial attack and will limit its inquiry to the allegations in the Second Amended Complaint.

Although Defendants move for dismissal under both Rules 12(b)(6) and 12(c), both types of motions are reviewed under the same standard – the standard applicable to Rule 12(b)(6) motions.

---

[2]Defendants' citation of, and discussion regarding, the Michigan Court Rules in their motion to dismiss Ritchie's state law claims was unnecessary because "[t]he Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001).

3

*EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

Pursuant to Rule 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Generally speaking, when considering a motion under Rule 12(b)(6) or Rule 12(c), a court's review is limited to the allegations in the complaint. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011).  The court may also consider "matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint*" on a motion to dismiss. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (internal quotation marks omitted).  If matters outside the pleadings are presented, the court must either exclude them or convert the motion to a summary judgment motion under Rule 56 and afford the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

In the instant case, Defendants reference various facts not alleged in the Second Amended Complaint, such as that Ritchie attended  School Board meetings in June and August of 2010 and that Iveson offered Ritchie the opportunity to present his complaints at an executive session of the School Board on or about June 14, 2010.  While the occurrence of regular School Board meetings is likely a matter of public record, the fact of Ritchie's attendance at such meetings, and whether Iveson offered Ritchie the opportunity to appear at an executive session, likely are not.  Moreover, Defendants fail to explain why the Court can consider these facts, nor do they offer any exhibits to support them.  Similarly, Ritchie references various facts not alleged in the Second Amended Complaint, such as the exchange between Kerr and the dispatcher during the September 27, 2010, School Board meeting.  Ritchie also attaches various evidentiary materials to his response to Defendants' motion to dismiss the federal claims.  Some of the materials, such as the School Board bylaws, are matters of public record that may be considered on a motion to dismiss, but other materials, such as Ritchie's affidavit, the June 18, 2010, memorandum from Disler to the School Board, and the August 4, 2010, and October 1, 2010, updates to the School Board are summary

judgment materials not appropriate for consideration on a motion to dismiss.  The same is true of the affidavit of former Defendant Ronald Smith and the transcripts of his interviews by Ritchie's counsel, which Ritchie attaches to his response to Defendants' motion to dismiss the remaining issues and new issues presented in the Second Amended Complaint.  Therefore, the Court will address the instant motions under the Rule 12(b)(6) standard, considering only the allegations of the Second Amended Complaint and any materials that may properly be considered on a motion to dismiss.

Finally, Defendants move for dismissal pursuant to Rule 12(h)(3).  This rule does not provide a separate basis for a motion to dismiss.  Rather, it merely recites the well-known rule that a court must dismiss an action if at any time it determines that it lacks subject matter jurisdiction.[3]

## II. BACKGROUND

### A.    Facts

Ritchie is a resident of Branch County, Michigan, and resides within the School District.  (2d Am. Compl. ¶ 5.)  Defendant Disler is an employee of Defendant PESG and provided services as a contract employee to the School District until June 30, 2010, in the capacity of Superintendent. (Id. ¶¶ 11, 12.)  Defendant Kerr was appointed Superintendent of the School District on or about

---

[3]Defendants also move pursuant to Rule 12(g)(1) to join their separate motion to dismiss Ritchie's federal/constitutional law, 42 U.S.C. § 1983, First and Fourteenth Amendment claims with their separate motion to dismiss Ritchie's state-law-based claims and to join both of those motions with their motion to dismiss the remaining issues and new issues in Ritchie's Second Amended Complaint.  Defendants misinterpret Rule 12(g)(1), which provides that "[a] motion under this rule may be joined with any other motion allowed by this rule."  Rule 12(g)(1) simply allows a party to combine a motion to dismiss with any other type of motion authorized by Rule 12, such as a motion to strike or a motion for a more definite statement.  *See Townsend v. BAC Home Loans Servicing, L.P.*, 461 F. App'x 367, 371 (5th Cir. 2011) (noting that Rule 12(g)(1) allows "the filing of a motion to dismiss in the same document as an alternative motion for a more definite statement").  This rule does not contemplate a party filing multiple separate motions to dismiss addressing different claims.  Defendants' misinterpretation may explain the excessive briefing by the parties. Although the Court acknowledges that it granted the parties' motions for leave to exceed the briefing page limitations set forth in Local Rule 7.2(b) and (c), it questions the need for 189 pages of briefing, which does not even consider the number of pages devoted to Defendants' motion to dismiss the remaining issues and new issues raised in the Second Amended Complaint.

July 1, 2010, and continues to serve in that position. (*Id.* ¶ 13.) At all times relevant to Ritchie's claims, Defendant Iveson was the President of the School Board. (*Id.* ¶¶ 9, 58.)

During 2010, Ritchie's daughter was a student in the School District, at Jefferson Elementary School. On April 23, 2010, Ritchie's daughter told him that her teacher had pulled or tugged on her hair, without permission or consent, causing her pain. (*Id.* ¶ 24.) Ritchie reported the incident as an alleged assault and battery to the CPD. Thereafter, Ritchie attempted to ensure that the School District properly investigated the incident by bringing it to the attention of the School Board and certain members of the "general citizenry." (*Id.* ¶ 27.) On May 7, 2010, Disler informed Ritchie in writing that he was prohibited from contacting school employees other than Pete Rogovich, Doug Bower (the principal of Jefferson Elementary) and Disler himself. (*Id.* ¶ 28.)

On May 24, 2010, Ritchie attended the monthly School Board meeting and attempted to address the School Board during the public comment portion of the meeting. As Ritchie attempted to play an audiotape recording of a conversation – apparently one between himself and Disler – Disler cut Ritchie off, claiming that Ritchie had no right to record the conversation. Disler also cut off Ritchie's comments about his daughter's teacher, stating that the matter had to be handled in closed session. (*Id.* ¶¶ 29, 57a. and b.) In addition, Disler stated that Ritchie was not permitted to speak about matters which Disler had previously told Ritchie could not be addressed at the public meeting. (*Id.* ¶ 57c.) Iveson similarly cut Ritchie off on the basis that his comments were not consistent with either the School Board's nor Iveson's own policies. Iveson also invoked a closed session option pursuant to the OMA on the basis that the employee-teacher had requested a closed meeting, even though the Board's own policies allow persons stating complaints against employees to state their entire complaint before adjournment to executive session. (*Id.* ¶ 58.)

On June 11, 2011, Ritchie went to the School District's Administration Building, apparently to obtain School Board meeting minutes.  While there, a CPD officer ordered Ritchie to leave and notified him that he would be arrested if he returned to the Administration Building.  (*Id.* ¶ 31, 65.) Disler was present when the CPD officer threatened to arrest Ritchie if he returned to the Administration Building, and Disler authorized or approved the order and threat of arrest in response to the officer's inquiry.  (*Id.* ¶¶ 66, 72.)  Disler knew that the order precluded Ritchie from attending School Board meetings held at the Administration Building, as he communicated this fact to the School Board members shortly thereafter.  (*Id.* ¶¶ 68, 70.)  However, Disler failed to inform the CPD officer that the order violated Ritchie's right to attend School Board meetings.  Ritchie alleges that the threat of arrest, in which Disler concurred, precluded Ritchie from attending the July 12, 2010, School Board meeting.  (*Id.* ¶¶ 33, 71.)

On August 3, 2010, Ritchie met with Kerr in an effort to resolve certain issues.  Following the meeting, on August 25, 2010, Kerr sent Ritchie a letter advising him that he was not permitted on School District property without prior permission from Kerr.  Kerr noted, however, that Ritchie was allowed to attend School Board meetings and events involving his child without prior approval. (*Id.* ¶ 35.)  Kerr further advised Ritchie that if he intended to complain about School District employees at a School Board meeting he was required to advise Kerr of the name of the employee, the nature of the complaint, and the desired outcome, by 3:00 p.m. on the Tuesday before the scheduled meeting.  Kerr further reminded Ritchie that "'[p]ersonal attacks on individuals will not be permitted and considered out of order."  (*Id.*)

On September 7, 2010, Ritchie picketed near Jefferson Elementary School, but off school property, in order to convey his view of how children were being treated by staff at the elementary school.  While he was picketing, agents of the School District reported to the CPD that Ritchie was

trespassing on school property, contrary to Kerr's August 25, 2010, letter.  Shortly thereafter, CPD officers appeared and confronted Ritchie over his picketing activities and whether or not he had been on school property.  (*Id.* ¶¶ 37-38.)

On September 27, 2010, Ritchie learned that the Branch County Prosecutor had filed charges against him for trespassing on School District property on September 7, 2010.  Ritchie immediately turned himself in to the authorities, waived arraignment, and posted bond as authorized by the court. (*Id.* ¶ 39.)  Later that night, Ritchie appeared at the School Board meeting.  Concerned that Ritchie would seek to speak, Kerr directed an agent of the School District to contact the CPD to have Ritchie removed from the meeting.  Kerr took this action even though she had authorized his attendance in her August 25, 2010, letter and even though she knew that he had a right to attend the public meeting.  (*Id.* ¶ 40.)  Kerr requested the CPD officers to intervene and remove Ritchie so that he could not speak and be heard at the public meeting.  (*Id.* ¶ 85.)  Pursuant to Kerr's request, CPD officers arrested, handcuffed, and forcibly removed Ritchie, in spite of his protest that he was legally entitled to attend the meeting.  (*Id.* ¶¶ 40c., 86.)

On October 25, 2010, Ritchie appeared at the monthly School Board meeting.  Following a recess without a required vote of the School Board members, an agent of the School District, at Kerr's request, contacted the CPD to have Ritchie removed from the meeting.  (*Id.* ¶¶ 41a., 97-98.) When CPD officers arrived at the meeting, Kerr told the officers that she feared that Ritchie would seek to speak at the meeting and that she wanted him removed from the premises.  (*Id.* ¶ 99.) Thereafter, the officers arrested, handcuffed, and removed Ritchie from the premises.  (*Id.* ¶¶ 41c., 102.)

On October 27, 2010, the Public Safety Director for the CPD issued a letter to Ritchie apologizing for arresting him on September 27, 2010, and October 25, 2010.  The following day,

October 28, the City of Coldwater city attorney requested dismissal of the charges against Ritchie arising out of his attendance at the September 27 and October 25 School Board meetings. (*Id.* ¶¶ 42-43.) On March 31, 2011, a jury acquitted Ritchie of the trespassing charges arising out of his September 7, 2010, activity at Jefferson Elementary School. (*Id.* ¶ 44.)

**B.      Procedural History**

On May 20, 2011, Ritchie filed a six-count complaint, against the School District, the School Board, Kerr, Disler, and School Board members Jean Milnes, William Rodgers, Ronald Smith, Rick Gates, Edward Lake, James Hiscock, Clair Dean, and Nicholas Krzeminski (Board Members), alleging five claims under § 1983 for violation of Ritchie's constitutional rights and a state law claim alleging a violation of the OMA. On July 28, 2011, Ritchie filed a First Amended Complaint, which added state law claims for violation of the OMA and malicious prosecution that had been pending in a separate state court case Ritchie had filed against Defendants. Ritchie filed his Second Amended Complaint on January 6, 2012, after Defendants filed the instant motions to dismiss the federal and state law claims. The Second Amended Complaint added PESG as a Defendant, omitted a malicious prosecution claim, and added a claim for violation of the Michigan Constitution and a separate claim against PESG based on Disler's alleged actions. Finally, on April 10, 2012, the Court entered an Order approving the parties' stipulation for dismissal of the Board members, leaving the School District, the School Board, Kerr, Disler, Iveson, and PESG as the remaining Defendants.

## III. DISCUSSION

**A.      Lack of Subject Matter Jurisdiction**

Defendants contend that the Court lacks subject matter jurisdiction over Ritchie's federal constitutional claims because the claims are so insubstantial that federal jurisdiction is unwarranted. This argument invokes the doctrine of "constitutional insubstantiality" enunciated in *Hagans v.*

*Lavine*, 415 U.S. 528, 94 S. Ct. 1372 (1974), which holds that a federal court lacks jurisdiction over claims "so attenuated and unsubstantial as to be absolutely devoid of merit." *Id.* at 536, 94 S. Ct. at 1379 (internal quotation marks omitted). The Court explained the doctrine's limits as follows:

> "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," "wholly insubstantial," "obviously frivolous," and "obviously without merit." The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281.

*Id.* at 537-38, 94 S. Ct. at 1379 (internal quotations and citations omitted). The Sixth Circuit has observed that the *Hagans* standard is "'easily met–an *arguably* plausible claim must be allowed to proceed.'" *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (quoting *Robbins v. Reagan*, 780 F.2d 37, 43 (D.C. Cir. 1985)).

Ritchie's claims – with the possible exception of certain aspects of his due process claim, which the Court analyzes for failure to state a claim – all meet the *Hagans* standard. That is, they are arguably plausible and not "wholly insubstantial" or "obviously frivolous." The majority of Ritchie's claims pertain to Defendants' interference with Ritchie's rights to speak at and/or attend School Board meetings which, as explained below, are well-recognized in the law. Thus, Ritchie's claims are within this Court's jurisdiction.

## B. Failure to State a Claim – Federal Claims

### 1. Identity of Individual Defendants

As a first step in analyzing Defendants' motion to dismiss the federal claims, the Court must determine the capacity or capacities in which the individual Defendants have been sued – i.e., official or individual capacity – because capacity dictates certain matters, such as qualified

immunity and proof of liability.  In *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099 (1985), the

Supreme Court distinguished individual-capacity from official-capacity claims as follows:

> Personal-capacity suits seek to impose personal liability upon a government
> official for actions he takes under color of state law.  *See, e.g.*, *Scheuer v. Rhodes*,
> 416 U.S. 232, 237-38, 94 S. Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974).  Official-
> capacity suits, in contrast, "generally represent only another way of pleading an
> action against an entity of which an officer is an agent."  *Monell v. New York City
> Dept. of Social Services*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035, n.55, 56
> L.Ed.2d 611 (1978).  As long as the government entity receives notice and an
> opportunity to respond, an official-capacity suit is, in all respects other than name,
> to be treated as a suit against the entity.  *Brandon* [*v. Holt*, 469 U.S. 464,] 471-72,
> [105 S. Ct. 873], 878 [(1985)].  It is *not* a suit against the official personally, for the
> real party in interest is the entity.  Thus, while an award of damages against an
> official in his personal capacity can be executed only against the official's personal
> assets, a plaintiff seeking to recover on a damages judgment in an official-capacity
> suit must look to the government entity itself.

*Id.* at 165-66, 105 S. Ct. at 3105.  Officials sued in their personal capacity are entitled to raise

personal immunity defenses such as qualified immunity.  *See Harvey v. Campbell Cnty.*, 453 F.

App'x 557, 563 (6th Cir. 2011) (noting that qualified immunity "shields government officials

performing discretionary functions from individual-capacity liability if their actions did not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known").  On the other hand, because an official-capacity lawsuit is in effect a suit against the entity

the official represents, qualified immunity is not available.  *Graham*, 473 U.S. at 167, 105 S. Ct. at

3105-06; *see also Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) ("The qualified immunity

defense is not available to municipalities or to persons acting on behalf of municipalities, such as

Police Chief Joe Melton, when sued in their official capacity only.").  Moreover, to succeed on an

official-capacity claim against an individual defendant, a plaintiff must allege that an official policy

or custom of the governmental entity caused the constitutional violation.  *Monell*, 436 U.S. at 690,

98 S. Ct. at 2035-36; *Shorts v. Bartholomew*, 255 F. App'x 46, 57 (6th Cir. 2007) ("In order to

support an official-capacity theory, Shorts needed to connect his wrongful imprisonment with a Sheriff's Department policy or custom.").

In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit held that a plaintiff seeking damages from an individual defendant under § 1983 must clearly allege in his complaint that he is suing the defendant in his individual capacity for damages rather than in his official capacity. *See id.* at 592. Absent an allegation that the individual defendant is being sued in his individual capacity, the court must assume that the suit is brought against the individual only in official capacity. *See id.* at 594. Subsequently, however, the Sixth Circuit has held that a plaintiff's failure to state explicitly in his complaint that the defendant is being sued in his individual capacity "is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). The *en banc* majority in *Moore* observed that Sixth Circuit cases had applied a "course of proceedings" test for determining whether an individual defendant had received notice that the plaintiff intended to hold him personally liable. *Id.* This "test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Id.* at 772 n.1.

Although Ritchie did not clearly allege in any of his complaints that he was suing the individual Defendants in their individual capacities, Defendants did not raise the capacity issue in their motion to dismiss the federal claims. Instead, they argued the defense of qualified immunity as if Ritchie had sued the individual Defendants solely in their individual capacities, thus indicating that they had notice that Ritchie was suing Disler, Iveson, and Kerr individually. In their subsequent motion to dismiss the remaining issues and new issues in the Second Amended Complaint, however,

Defendants raised the issue of capacity, noting that Ritchie failed to allege that he was suing the individual Defendants in their individual capacities.  In his response to that motion, however, Ritchie clarified not only the Defendants against whom each claim is asserted, but the capacity in which each individual Defendant is sued.[4]  (Pl.'s Resp. to Defs.' Mot. to Dismiss Remaining Issues at 2-3.) Accordingly, the Court accepts Ritchie's designations for purposes its analysis of the instant motions.

### 2.      Qualified Immunity

Defendants Disler, Iveson, and Kerr argue that they are entitled to qualified immunity on Ritchie's claims under § 1983.  Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735 (1982)).  The affirmative defense of qualified immunity provides immunity from suit and not only as to liability.  *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009).

---

[4] Ritchie states in his response to Defendants' motion to dismiss the remaining issues and new issues that: "When a public official acts outside the scope of his or her authority, he or she is no longer being sued in an official capacity, but rather in a personal capacity."  (Pl.'s Resp. to Defs.' Mot. to Dismiss Remaining Issues at 21.)  This statement demonstrates a fundamental misunderstanding of the individual/official-capacity designations.  The two capacities are not mutually exclusive depending upon whether the individual defendant's acts are within the scope of their authority. *See Baar v. Jefferson Cnty. Bd. of Educ.*, Nos. 10-5704, 10-5741, 2012 WL 738741, at *12 (6th Cir. Mar. 7, 2012) (noting that the plaintiff's argument regarding the individual defendants failed to recognize that the defendants' "decision-making authority has nothing to do with the official-capacity claims against those individuals").  In *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991), the Court rejected the defendant's contention that she could not be sued individually because she was acting within the scope of her authority as the state's auditor general. *Id.* at 27-28, 112 S. Ct. at 363 ("The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as auditor general.  We cannot accept the novel proposition that this same official authority insulates Hafer from suit.").  The Court further found "no support in the broad language of § 1983" for the defendant's assertion that an official may be held individually liable only if he or she acted outside the scope of governmental authority. *Id.* at 28, 112 S. Ct. at 363.  Thus, an individual defendant may be sued in his official capacity, individual capacity, or both, without regard to whether the defendant's acts were within or outside of the scope of his or her governmental authority.

14

A qualified immunity analysis involves a two-step inquiry.  First, the court asks whether the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right. Second, the court asks whether the right at issue was "clearly established" at the time of the alleged misconduct.  *See Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)).  A court may consider these inquiries in either order. *See id.* at 306.

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks omitted).  A defendant may raise the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss.  *See Cockrell v. City of Cincinnati*, No. 10-4605, 2012 WL 573972, at *3 (6th Cir. Feb. 23, 2012) (noting that in deciding a motion to dismiss on the basis of qualified immunity, a court must "treat[] all allegations in the complaint as true and draw[] all inferences in favor of the non-moving party").

### 3.    Municipal Liability

A governmental entity, such as the School District or the School Board, can be found liable under § 1983 only where the entity itself causes the constitutional violation at issue.  *Monell*, 436 U.S. at 694,  98 S. Ct. 2037-38.  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119 (1987) (O'Connor, J., dissenting) (quoting *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037).  Therefore, the School District or the School board may be liable under § 1983 only if its policy or custom *caused* the alleged constitutional injury.  *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38.  In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir.

1996).  A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the governmental entity.  *Monell*, 436 U.S. at 690, 98 S. Ct. at 2035-36. "[M]unicipal liability under § 1983 attaches where–and only where–a *deliberate choice* to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1300 (1986) (emphasis added) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985)).

The policy or custom must be the moving force behind the constitutional injury, and the plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy.  *Doe*, 103 F.3d at 508-509; *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).  It is the Court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue.  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785, 117 S. Ct. 1734, 1736-37 (1997).

### 4.     The Claims

### *Count I*

In Count I, Ritchie alleges that Disler and Iveson violated his First Amendment rights during the May 24, 2010, School Board meeting by cutting him off as he attempted to speak during the public comment portion of the meeting.  Ritchie alleges that Disler and Iveson prevented him from speaking based on the content of his message.  Ritchie sues Disler and Iveson in their individual capacities and the School Board on this claim.  Ritchie also sues the School District, alleging that it is an essential party to all claims.  Disler and Iveson argue that they are entitled to qualified immunity.

When opened to the public, school board meetings are considered "designated" or "limited" public forums. *See City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175-76, 97 S. Ct. 421, 426 (1976); *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009). In the interest of conducting orderly and efficient meetings, school boards and other similar public bodies are permitted to adopt time, place, and manner rules or regulations, so long as the restrictions are content-neutral and narrowly-tailored to serve a significant governmental interest. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46, 103 S. Ct. 948, 955 (1983). The governmental body may not, however, discriminate among speakers on the basis of their speech, although it may confine the scope of public comment to the subject matter of the meeting. *City of Madison*, 429 U.S. at 176, 97 S. Ct. at 426. As the Supreme Court has observed:

> [U]nder the . . . First Amendment . . . , government may not grant the use of a forum to people whose views it finds acceptable, but deny use of those wishing to express less favored or more controversial views. . . . Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Police Dep't of the City of Chi. v. Mosley*, 408 U.S. 92, 96, 92 S. Ct. 2286, 2290 (1972).

Ritchie alleges that as he spoke during the public comment portion of the May 24, 2010, School Board meeting, Disler and Iveson interrupted him and cut him off based on the content of his message. Such allegations suffice to allege a violation of Ritchie's First Amendment rights. *See Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 387 (4th Cir. 2008) (noting that a plaintiff may challenge even a facially valid policy against personal attacks if the policy is used to chill or silence speech in a given circumstance).

Defendants contend that Ritchie fails to allege a First Amendment violation, but the cases they cite are distinguishable and provide no basis for dismissal. The plaintiff in *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005), was an attorney who argued that the defendant prosecutor made

defamatory statements about the plaintiff in response to the plaintiff's exercise of his First Amendment right to file motions and raise legitimate defenses on behalf of his client in court. The Sixth Circuit held that attorneys representing parties in court proceedings have no First Amendment rights in the judicial proceeding. *See id.* at 718-19. *Mezibov* obviously has no bearing on school board meetings. *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), while certainly applicable to Ritchie's due process claim, has no relevance to the exercise of First Amendment rights at a school board meeting. At issue in *Lovern* was the school superintendent's directive barring the plaintiff from school property. Although the Fourth Circuit noted that "[s]chool officials . . . have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property," *id.* at 655, there is no indication in *Lovern* that the plaintiff claimed that he was prevented from addressing a school board based on the content of his speech. Similarly, in *Cole v. Buchanan County School Board*, 328 F. App'x 204 (4th Cir. 2009), the plaintiff – a reporter – alleged that a school board's decision to ban him from school property was in retaliation for him exercising his First Amendment rights. There was no allegation that the reporter was prevented from exercising his First Amendment rights at a school board meeting.[5] Notably, the school board's resolution banning the reporter specifically excepted from its scope the reporter's attendance at school board meetings and the reporter was permitted to address the school board before it adopted the resolution. *See id.* at 207 & 207 n.3. Finally, *Lowery v. Jefferson County Board of Education*, 586 F.3d 427 (6th Cir. 2009), is both factually and procedurally distinguishable

---

[5]*Galena v. Leone*, 638 F.3d 186 (3d Cir. 2011), another case cited by Defendants, is also factually inapposite to the instant case because the plaintiff in *Galena* was ejected for interrupting the county council meeting by speaking after the public comment portion of the meeting had concluded. Nothing in Ritchie's allegations suggests that he attempted to speak at a time other than the public comment portion of the meeting. He alleges in Count I that his speech was cut off as he attempted to speak during the public comment portion of the May 24, 2010, meeting. In Counts III and IV he alleges that he was ejected from the September 27 and October 25, 2010, meetings even though he was not being disruptive.

from the instant case.  Procedurally, the appeal in *Lowery* followed a jury trial, not a motion to dismiss as in the instant case.  *See id.* at 430.  Factually, the issue was whether the school board's denial of the plaintiffs' request to speak under an adopted policy, which prohibited repetitive speech, was a valid time, place, and manner restriction.[6]  *Id.* at 433.

Defendants contend that in interrupting Ritchie's comments and cutting him off during the May 24, 2010, meeting, Disler and Iveson were only seeking to have Ritchie comply with Section 8(a) of the OMA.  Section 8(a) provides that "[a] public body may meet in a closed session . . . [t]o consider the dismissal, suspension, or disciplining of, or to hear complaints or charges brought against . . . a public officer, employee, staff member, or individual agent, if the named person requests a closed hearing."  M.C.L. § 15.267(a).  Defendants' argument fails, however, because Ritchie alleges that his comments concerned "the lack of an appropriate investigation into the matter of [his] daughter," (2d Am. Compl. ¶ 57b.), a matter which does not necessarily involve a complaint against Ritchie's daughter's teacher.  Morever, Ritchie alleges that Disler's and Iveson's conduct was contrary to the School Board's own policy of allowing a speaker to fully state their entire complaint.  (*Id* ¶ 58b.)  In this regard, in *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811 (W.D. Mich. 1999), this Court, concurring with a Michigan Attorney General advisory opinion, concluded that a public body may not preclude a citizen from speaking on a matter of public concern on the basis that the matter might be considered during a closed meeting.  *See id.* at 817-18.  Finally, Defendants do not contend that Disler's refusal to allow Ritchie to play his audio recording was pursuant to an established rule or policy.

---

[6]Although Defendants suggest that Ritchie's comments merely repeated his wife's comments earlier in the meeting, this assertion relies on facts not alleged in the Second Amended Complaint.  Moreover, there is no indication that Disler or Iveson cut Ritchie's comments short on the basis of a policy similar to that at issue in *Lowery*.

Ritchie's right to speak at a school board meeting without restriction on the content of his speech was clearly established as of the time of the May 24, 2010, meeting.  *See City of Madison*, 429 U.S. at 176, 97 S. Ct. 426.  Thus, a reasonable school official would have known that a school board may not discriminate against a speaker based on the content of his speech.

As for the School Board, although Ritchie fails to identify a specific policy or custom of the School Board that *caused* the constitutional violation, his allegations suffice to establish a basis for the School Board's liability, at least for purposes of a motion to dismiss.  Ritchie alleges that Iveson's act of cutting him off from speaking was contrary to the School Board's own policy, which required that he be allowed to state his entire complaint before discussion and adjournment to executive session.  Although it is arguable that the alleged First Amendment violation resulted from Iveson's failure to *follow* the School Board's policy rather than because of a School Board policy, it is important to remember that Iveson was not merely a member of the School Board but was the President and, thus, was responsible for running the meetings.  In other words, Ritchie may be able to show that Iveson's decisions relating to the conduct of the meeting amounted to informal School Board policy, which trumped the written policy.  *See McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 332 (E.D.N.Y. 2002) ("Finally, McGrath may establish that Rosenblum's position as chairman of the NHCC board of directors rendered his activities a NHCC custom or policy.").  As for Disler, while he was not a member of the School Board, Ritchie's allegations arguably demonstrate a policy or custom of the School Board of deferring to the superintendent during School Board meetings.  For example, during the May 24 meeting, Disler interrupted and cut off Ritchie's comments, apparently without comment from, or being ruled out of order by, Iveson.  Thus, Ritchie may be able to demonstrate that Disler's actions during the School Board meeting were pursuant to School Board custom or policy.

Finally, nothing in Ritchie's allegations indicates that a School District policy or custom caused the alleged violation at the School Board meeting. Therefore, the Court will dismiss this claim only against the School District.

### Count II

In Count II, Ritchie alleges that Disler interfered with Ritchie's First Amendment right to attend the July 12, 2010, School Board meeting by approving a CPD officer's order to Ritchie on June 11, 2010, to refrain from appearing at the Administration Building under threat of arrest. Ritchie alleges that the officer's threat of arrest precluded him from attending the July 12 meeting. Ritchie asserts this claim against the School Board and Disler in his individual capacity.

Ritchie had a First Amendment right to attend the School Board meeting. *See Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, Nos. 93-3231, 93-3303, 1994 WL 622153, at *7 (6th Cir. Nov. 7, 1994) (per curiam) (citing *City of Madison*). Moreover a threat of arrest based on the exercise of First Amendment rights can result in a constitutional violation even in the absence of an actual arrest or prosecution. *See NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 338 (1963) ("The threat of sanctions may deter the[] exercise [of free speech] almost as potently as the actual application of sanctions."); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (noting that "a realistic threat of arrest is enough to chill First Amendment rights").

Defendants contend that Ritchie fails to state a claim against Disler because Ritchie does not allege that Disler told him that he could not attend the July 12, 2010, School Board meeting. Even so, Ritchie alleged that "Defendant Disler authorized, acquiesced in and/or tacitly approved the order and threat of arrest when specific inquiry was made by the issuing police officer to Defendant Disler." (2d Am. Compl. ¶ 72.) Moreover, Ritchie alleges that Disler understood the effect of the CPD officer's order when Disler subsequently advised the School Board that the CPD officer's order

21

precluded Ritchie from attending the July 12 meeting.  (*Id.* ¶ 70.)  Thus, Ritchie has adequately alleged that Disler was responsible for the order and threat of arrest.  Defendants further argue that Ritchie failed to allege that he did not attend the June 2010 and August 2010 public meetings.  Defendants imply that Ritchie did attend those meetings, which shows that the threat of arrest did not chill or deter Ritchie's attendance of the July 12 meeting.  Facts relating to the June and August public meetings, however, do not appear in the Second Amended Complaint, nor do they appear in materials that Defendants have submitted which the Court may consider on a motion to dismiss.  While Defendants may raise these facts in a motion for summary judgment, the Court will not consider them here.  Thus, the Court concludes that Ritchie has alleged a constitutional violation in Count II.

As of June 11, 2010, the law was clearly established both as to a citizen's right to attend a school board meeting and that a threat of arrest which chills the exercise of such right can give rise to a constitutional violation.  *Hansen*, 1994 WL 622153, at *7; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2309 (1979).  Defendants argue, however, that the law was not clearly established that Disler was required to clarify for the CPD officer that Ritchie could not be arrested for attending a School Board meeting.  The Court understands Ritchie's claim to be that the CPD officer issued the order and threat of arrest to Ritchie only after obtaining approval from Disler.  In other words, the CPD officer acted at the behest of Disler.  Because Disler was, in effect, responsible for the scope of the order, he should have known that neither he nor the CPD officer could lawfully deter Ritchie from attending School Board meetings with a threat of arrest.  Moreover, Ritchie's allegations show that Ritchie and Disler both understood the officer's order to extend to School Board meetings.  *Cf. Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S Ct. 2318, 2325-26 (1972) (stating that "[a]llegations of a subjective chill are not an adequate

substitute for a claim of specific present objective harm or a threat of specific future harm" (internal quotation marks omitted)).  Therefore, Disler is not entitled to qualified immunity on Count II.

Regarding the School Board, although Ritchie does not allege that Disler acted pursuant to School Board policy or authorization in approving the officer's order and threat, Ritchie alleges that Disler later advised the School Board of the order and threat of arrest and the impact it would have on Ritchie not being able to attend the July 12, meeting.  Disler was likely not a final policymaker with regard to matters pertaining to School Board meetings, but the School Board was the policymaking body.  M.C.L. § 380.11a(5) ("A general powers school district is a body corporate and shall be governed by a school board.").  If Disler notified the School Board that he authorized the officer's order precluding Ritchie from attending the July 12 School Board meeting and the School Board failed to act to correct the illegal order, Ritchie may be able to show a policy or custom of the School District through ratification by inaction.  *See Glenn v. Wash. Cnty.*, 673 F.3d 864, 880 (9th Cir. 2011) (noting that "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it" (internal quotation marks omitted)); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724 (1989)).  Therefore, the Court will deny Defendants' motion on this Count with regard to Disler and the School Board.

Although Ritchie's allegations are minimal as to the School District's liability, they show that Disler, the highest-ranking official for the School District, approved and authorized the officer's order to Ritchie.  Disler certainly had authority to make decisions with regard to School District

23

property. Thus, if Disler was a final policy-maker for the School District, Ritchie may be able to show that his approval of the order barring Ritchie from the Administration Building for all purposes constituted official School District policy. Therefore, the motion will also be denied on this Count with regard to the School District.

### Counts III and IV

Ritchie alleges in Counts III and IV that Defendant Kerr violated his First Amendment rights by having CPD officers forcibly remove Ritchie from the September 27, 2010, and October 25, 2010, School Board meetings, when he was not causing a disturbance and was merely exercising his right to attend the public meeting. Ritchie states that he asserts these claims against the School Board; Disler in his individual capacity; and Iveson in her official capacity. Regarding Disler, Ritchie fails to allege that Disler was involved in any way with these incidents. Rather, the allegations of the Second Amended Complaint show that Kerr was solely responsible for the decision to have CPD officers remove Ritchie from the meetings; Disler is not even mentioned. Therefore, the Court proceeds under the assumption that Ritchie intends to assert the claim against Kerr in her personal capacity, rather than Disler.

As noted above, Ritchie had a right to attend the September 27 and October 25 School Board meetings and to speak at those meetings. Ritchie's allegations that Kerr requested the CPD officers to remove Ritchie from the premises and to arrest him, if necessary, suffice to establish a violation of his First Amendment rights. Moreover, a reasonable school official would have known at the time of the September and October meetings that she could not interfere with a citizen's right to attend a public school board meeting, so long as the citizen was not creating a disturbance. *See Hansen*, 1994 WL 622153, at *7 ("The plaintiffs had a right to attend this public meeting of the local school board.").

24

Defendants argue that Kerr had no reason to believe that she would be violating Ritchie's clearly established rights by asking police officers to attend a school board meeting and relying on the officers to determine whether probable cause existed to arrest Ritchie.  In so arguing, however, Defendants mischaracterize the basis of Ritchie's claim.  Ritchie is not alleging that Kerr violated his rights by summoning the police to attend the meeting.  Moreover, the fact that CPD officers removed Ritchie from the meeting is not fatal to Ritchie's claim, because Ritchie alleges that Kerr asked the officers to remove him.  Finally, Defendants argue that "[b]ecause the CPD officers removed [Ritchie] before any defendant could know what, if anything, he intended to say, his removal was content-neutral for 1st Amendment purposes." (Defs.' Br. Supp. Mot. to Dismiss Fed. Claims at 21.)  This argument boarders on being frivolous.  Ritchie is alleging that the removal violated his right under the First Amendment to *attend* the meeting regardless of whether he sought to speak.  Furthermore, the removal was obviously content-based: Ritchie alleges that he was not creating a disturbance, was not violating any rules, and that Kerr requested the officers to remove Ritchie precisely because she was concerned that Ritchie would seek to speak.  No other spectators were removed or asked to leave.  Therefore, Kerr is not entitled to qualified immunity on these claims.

As to the School Board, Kerr had the officers remove Ritchie from the meetings in the presence of the School Board.  Kerr was not simply a private citizen attending the meeting, but instead was acting on behalf of the School Board.  The School Board's failure to intervene in the removal, when it was in charge of the meeting, including the removal of disruptive attendees, may demonstrate its tacit approval or authorization of Kerr's actions, amounting to an official policy or custom.  Therefore, the School Board will not be dismissed from this claim.  However, the Court will dismiss Ritchie's official capacity claim against Iveson as it is duplicative of Ritchie's claim against the School Board.

25

Finally, the Court will dismiss the School District from this claim as nothing in Ritchie's allegations suggest that Kerr was acting pursuant to an official policy or custom of the School District.

### Count V

Count V alleges a claim for injunctive relief based upon the claims alleged in Counts I through IV.  Injunctive relief, like damages, is a remedy and not a separate "cause of action." *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977); *Frausto v. Wells Fargo Bank, N.A.*, No. 3:11-cv-0791-LRH-VPC, 2012 WL 1855154, at *2 (D. Nev. May 21, 2012) ("Claims for declaratory and injunctive relief are remedies that may be afforded to a party after he has sufficiently established and proven his claims; they are not separate causes of action.").  Accordingly, the Court will dismiss Count V with the understanding that Ritchie may seek injunctive relief if he is successful on his substantive claims under § 1983.

### Count VII

In Count VII, Ritchie alleges that Defendants violated his right to due process under the Fourteenth Amendment by banning or limiting his access to school property without first affording him notice and an impartial hearing.  Ritchie asserts this claim against the School District, the School Board, and Kerr in her official capacity.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  In order to establish a procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989) (citations omitted).

The factual basis of Ritchie's due process claim is not entirely clear. In paragraph 131 of the Second Amended Complaint, Ritchie alleges that Defendants sought to deny him access to public buildings for: (1) open meetings of the School Board; (2) reviewing or obtaining notices of School Board meetings; (3) attending sporting events or other school events in which his children are involved; and (4) convening unlawful executive sessions to consider punitive action against Ritchie. In paragraph 135 of the Second Amended Complaint, Ritchie alleges that "[e]ffective January 1, 2012, [the School Board] via its authorized agent rescinded the ban on access to its buildings or facilities for lawful purposes, but did so only after the filing and reality of this litigation." From what the Court can ascertain, the ban to which this claim alludes is Kerr's August 25, 2010, letter advising Ritchie that he was not allowed on school property without prior permission from Kerr, but was allowed to attend School Board meetings and events in which his child was a participant without Kerr's prior approval. (2d Am. Compl. ¶ 35.) Although the OMA claim alleged in Count VI refers to a poll taken during an executive session of the November 22, 2010, School Board meeting regarding a proposed resolution to ban Ritchie from all school property, it appears that the resolution did not pass, and the Second Amended Complaint mentions no other ban. Apart from the ban by Kerr, it appears that Ritchie may be alleging that Disler's approval of the CPD officer's order to not go into the Administration Building and Kerr's requests that CPD officers remove Ritchie from the two School Board meetings violated his due process rights.

To the extent that Ritchie's claim is based on a ban or restrictions precluding him from accessing school property – in contexts other than attending School Board meetings open to the public – he fails to state a due process claim because he does not have a liberty interest in accessing

27

school property.  As the Fourth Circuit indicated in *Lovern v. Edwards*, 190 F.3d 648 (4th Cir.

1999), school officials have broad discretion to limit parent and third-party access to school property

in order to ensure student safety and prevent disruptions in the educational process.  *See id.* at 655

(noting that school officials are responsible for assuring that "parents and third parties conduct

themselves appropriately while on school property" and that "such officials should never be

intimidated into compromising the safety of those who utilize school property").  Moreover, citizens

do not have an unfettered right of access to school property simply because it is public.  Regarding

public universities, for example, the Supreme Court has stated:

> A university differs in significant respects from public forums such as streets or
> parks or even municipal theaters.  A university's mission is education, and decisions
> of this Court have never denied a university's authority to impose reasonable
> regulations compatible with that mission upon the use of its campus and facilities.
> We have not held, for example, that a campus must make all of its facilities equally
> available to students and nonstudents alike, or that a university must grant free
> access to all of its grounds or buildings.

*Widmar v. Vincent*, 454 U.S. 263, 267 n.5, 102 S. Ct. 269, 273 n.5 (1981).

In the context of due process claims, to this Court's knowledge, every court that has

considered the issue has concluded that citizens, including parents, do not have a liberty or property

interest in accessing school property.  *See Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*,

42 F.3d 719, 724 (2d Cir. 1994) ("As a Board of Education member, Silano did not have an

unrestricted right to enter the school classrooms or hallways during school hours."); *Justice v.

Farley*, No. 5:11-CV-99-BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012) ("Many courts have

held that parents do not have a constitutional right to be on school premises"); *Martin v. Clark*, No.

3:10 CV 1500, 2010 WL 4256030, at *2 (N.D. Ohio Oct. 21, 2010) (noting that the plaintiff had

"not directed the Court to any authority, in this jurisdiction or elsewhere, that establishes he has a

liberty interest in attending school functions or being on school property"); *Cwik v. Dillon*, No. C-1-

28

09-669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010) (concluding that the "Plaintiff's liberty interest in directing the education of his children does not extend to a constitutional right to unlimited admittance into or onto the building and grounds of his children's school"); *Pearlman v. Cooperstown Cent. Sch. Dist.*, No. 3:01-CV-504, 2003 WL 23723827, at *3 (N.D.N.Y. Apr. 6, 2003) (holding the plaintiff-principal who was suspended for inappropriate behavior with a female student and was forbidden from entering school property without the permission of the superintendent while on suspension lacked a liberty interest required to support a due process claim).

In *Mejia v. Holt Public Schools*, No. 5:01-CV-116, 2002 WL 1492205 (W.D. Mich. Mar. 12, 2002), this Court held that the right of parents to direct and control the education of their children does not include the right to go onto school property to participate in the child's education. *See id.* at *6. The plaintiff in *Mejia* had been accused of masturbating in his car on school property while waiting to pick up his son from school. The plaintiff was charged with indecent exposure but acquitted following a jury trial. After his acquittal, the plaintiff sought permission from the school to resume picking his son up from school. The school district refused the request and notified the plaintiff that he would be arrested for trespassing if he attempted to go onto school property. *See id.* at *1. Citing relevant cases, this Court concluded that the plaintiff had no constitutional right to go onto school property, even though he had been acquitted of the accused inappropriate conduct. *Id.* at *4. This Court also rejected the plaintiff's argument that the school's directive banning him from school property was contrary to his right to direct and control his child's education because it precluded him from attending parent-teacher conferences. The Court observed that the Supreme Court cases recognizing a parent's right to participate in his or her child's education did not create "a right of parents to go onto school property for purposes of participating in the child's education." *Id.* at *6. Although *Mejia* involved a substantive due process claim, the Court finds no reason for

29

not extending it to procedural due process claims.  Moreover, Ritchie cites no authority holding that he has a liberty interest in accessing school property.  The cases upon which Ritchie relies pertain to loitering in public places and banishment – issues unrelated to the right to access public school property.

With regard to Disler's approval of the CPD officer's order to refrain from going to the Administration Building and Kerr's requests that CPD officers remove him from the September 27 and October 25, School Board meetings, even if Ritchie has a liberty interest in attending and speaking at school board meetings, *see Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999) (noting that "First Amendment rights may constitute a liberty interest under the Due Process Clause" (citing *Adkins v. Bd. of Educ. of Magoffin Cnty.*, 982 F.2d 952, 955 (6th Cir. 1993)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002), the First Amendment provides the explicit textual source for Ritchie's due process claim.  This portion of Ritchie's due process claim is thus redundant of Ritchie's First Amendment claims and will therefore be dismissed.  *See Decker v. Borough of Hughestown*, No. 3:09-cv-1463, 2009 WL 4406142, at * (M.D. Pa. Nov. 25, 2009) (dismissing the plaintiff's procedural due process claim for failure to state a claim as redundant of his First Amendment claim).  Therefore, Count VII will be dismissed as to all Defendants.

## C.      Failure to State a Claim – State Law Claims

### 1.      Malicious Prosecution

Defendants contend that Ritchie's malicious prosecution claim in Count VIII against Kerr fails to state a claim because Kerr is entitled to absolute governmental immunity as the Superintendent of the School District.  Ritchie alleges that Kerr is liable for the tort of malicious

prosecution based on her requests of CPD officers to remove Ritchie from the September 27 and October 25 meetings.

Under M.C.L. § 691.1407(5), "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority."  As Superintendent, Kerr is the highest appointive executive official for the School District.  *See Nalepa v. Plymouth-Canton Cmty. Sch. Dist.*, 207 Mich. App. 580, 589-90, 525 N.W.2d 897, 901-02 (1994) (noting that "[t]he superintendent is the administrator who, among other duties, executes the dictates of the board" and "is the highest appointive executive of the school district").  Ritchie does not dispute that as Superintendent, Kerr was the highest appointive executive official of the School District.  He argues, however, that Kerr is not entitled to absolute immunity under § 1307(5) because she was acting outside the scope of her authority.  In particular, Ritchie contends that Kerr was not a member of the School Board and therefore lacked authority to ban, or have him removed from, School Board meetings.

Contrary to Ritchie's argument, the Court concludes that Kerr is entitled to absolute immunity on the malicious prosecution claim.  Michigan courts construe the phrase "scope of authority" to mean "'[t]he reasonable power that an agent has been delegated or might foreseeably be delegated in the carrying out of the principal's business.'" *Backus v. Kauffman*, 238 Mich. App. 402, 409, 605 N.W.2d 690, 694 (1999) (quoting Black's Law Dictionary 1348 (7th ed.)).  In determining whether a particular act was within an executive official's authority, courts should consider "a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority and the structure and allocation of powers in the particular level of

31

government." *Marrocco v. Randlett*, 431 Mich. 700, 711, 433 N.W.2d 68, 73 (1988). Ritchie contends that Kerr acted outside the scope of her authority because she is not a member of the School Board, *see* M.C.L. § 380.1229(1), and thus was not the presiding officer authorized or empowered to remove Ritchie from School Board meetings. *See* M.C.L. § 380.1808(1). While Ritchie is correct that Kerr was not a School Board member, Ritchie's argument ignores that the superintendent of a school district is the official charged with authority not only for implementation of educational policies of the school board, but for the day-to-day operation of school property and facilities. *See Nalepa*, 207 Mich. App. at 589, 525 N.W.2d at 902. As such, the superintendent necessarily has authority to limit access of parents and third parties and to have removed from school property any person the superintendent deems, even mistakenly, to be a trespasser. *See Armstrong v. Ypsilanti Charter Twp.*, 248 Mich. App. 573, 594, 640 N.W.2d 321, 333 (2001) (stating that allegations that government officials "committed intentional torts, . . . had an improper motive and purpose . . . [or] unlawful intent, [are] meaningless . . . [if] defendants were acting within the scope of their statutory authority"). Hence, while Kerr was not a School Board member, the School Board meeting was on School District property and Kerr acted within her authority as Superintendent.

Ritchie's malicious prosecution claim is also subject to dismissal because it fails to state a claim. Although Ritchie alleges that Kerr summoned the CPD officers and asked them to remove Ritchie, Ritchie fails to allege any facts showing that Kerr initiated the criminal trespass proceeding against Ritchie – a required element of a malicious prosecution claim. *See Walsh v. Taylor*, 263 Mich. App. 618, 632-33, 689 N.W.2d 506, 516-17 (2004). "If the defendant, as complainant, has made full and fair disclosure of all of the material facts within his knowledge to the prosecutor, and the prosecuting attorney recommends a warrant, no recovery may be had against said defendant, for

32

under such circumstances the complainant has not 'instituted' the charge." *Rivers v. Ex-Cell-O Corp.*, 100 Mich. App. 824, 833, 300 N.W.2d 420, 424 (1980).  In the instant case, Ritchie does not allege that Kerr gave false information to the officers or to the prosecutor.  On the contrary, Ritchie admits that Kerr told the officers that the meeting was a pubic meeting, that the OMA might apply, and that she wanted Ritchie removed from the premises to prevent him from speaking.  In light of these facts, Kerr made full and fair disclosure of all *material facts* and cannot be held liable for malicious prosecution.  Thus, Count VIII will be dismissed.

### 2.    Open Meetings Act Claims

Ritchie asserts claims for violation of the OMA in Counts VII and IX.

> The purpose of the OMA is to promote governmental accountability by facilitating public access to official decision making, and to provide a means through which the general public may better understand issues and decisions of public concern.  Stated another way, the primary purpose of the OMA is to ensure that public entities conduct all their decision-making activities in open meetings and not simply hold open meetings where they rubber-stamp decisions that were previously made behind closed doors.

*Higgs v. Houston-Philpot*, No. 302767, 2012 WL 1314104, at *2 (Mich. Ct. App. Apr. 17, 2012) (per curiam) (internal quotation marks and alteration omitted).  In relevant part, the OMA provides:

> (1)  All meetings of a public body shall be open to the public and shall be held in a place available to the general public.  All persons shall be permitted to attend any meeting except as otherwise provided in this act. . . .

> (2)  All decisions of a public body shall be made at a meeting open to the public.

> (3)  All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public except as provided in this section and sections 7 and 8.

> . . . .

> (5)  A person shall be permitted to address a meeting of a public body under rules established and recorded by the public body. . . .

33

(6)  A person shall not be excluded from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting.

M.C.L. § 15.263.  The OMA identifies a limited set of circumstances in which a public body may meet in a closed session.  *See* M.C.L. § 15.268.  In addition, the OMA contains provisions pertaining to notice of meetings and recording of minutes.  *See* M.C.L. §§ 15.264-15.266, 15.269.  Section 11 of the OMA authorizes an action against a "public body" to compel compliance or to enjoin further noncompliance with the OMA.  M.C.L. § 15.271(1).  A person who prevails on a Section 11 claim is entitled to costs and actual attorney fees.  M.C.L. § 15.271(4).  Section 13 authorizes a person or group of persons to bring an action against a "public official" who intentionally violates the OMA for actual and exemplary damages of not more than $500.00, plus costs and actual attorney fees.  M.C.L. § 15.273(1).

### *Count VI*

In Count VI, Ritchie alleges a claim against the School Board pursuant to Section 11 based on an alleged violation that occurred during the November 22, 2010, regular School Board meeting.[7] In particular, Ritchie alleges that during the meeting, which was subject to the OMA, the School Board adjourned to meet in "executive session" based on Section 8(h), which allows a closed session "[t]o consider material exempt from discussion or disclosure by state or federal statute."  M.C.L. § 15.268(h).  Ritchie alleges that during the closed meeting, the School Board discussed a proposed resolution to ban Ritchie from entering all School District property and took an informal poll of the School Board members, which turned out to be 3-4 against the resolution.  Ritchie contends that the executive session violated the OMA.

---

[7] Through the course of the briefing, Ritchie has conceded that his claim in Count VI does not apply to the School District or the individual Defendants.

34

Defendants contend that Ritchie fails to state a claim under Section 11 because he does not allege facts showing that the School Board made a decision or conducted a vote in a closed session that was required to be made in open session under the OMA.  The Court disagrees.  The OMA defines "meeting" as "the convening of a public body at which a quorum is present for the purpose of *deliberating toward* or rendering a decision on a public policy . . . ."  M.C.L. § 15.262(b) (italics added).  A "meeting" thus requires: "(1) a convening of a quorum of a 'public body,' (2) deliberation toward or rendering of a decision, and (3) a matter of public policy at issue."  *Brown v. Plainfield Twp.*, No. 291025, 2010 WL 4483680, at *2 (Mich. Ct. App. Nov. 9, 2010) (per curiam).  A "decision" is "a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy."  M.C.L. § 15.262(d).  Ritchie's allegations establish that the "executive session" during the November 22, 2010, meeting was required to be open to the public.  The meeting involved deliberations by a quorum of the School Board.  In particular, Ritchie alleges that the "School Board took up the issue of whether or not to pass a resolution to formally ban [Ritchie] entering upon any and all of the properties owned and maintained by [the School District]" and that the "School Board took an informal poll . . . as to the intended resolution."  (2d Am. Compl. ¶¶ 120-21.)  So long as the meeting involved deliberations, the lack of an actual vote or decision is irrelevant to whether a meeting is subject to the OMA.  *See Nicholas v. Meridian Charter Twp. Bd.*, 239 Mich. App. 525, 531, 609 N.W.2d 574, 578 (2000) (per curiam) ("When a quorum of the members of a public body meet to consider and discuss public business, it is a 'meeting' under M.C.L. § 15.262(b); MSA

4.1800(12)(b). Meetings with a quorum present held to deliberate a public question must be held at a public meeting.").[8]

### Count IX

In Count IX, Ritchie alleges claims against Iveson, Disler, and Kerr pursuant to Section 13 of the OMA. The violations include: (1) cutting Ritchie off at the May 24, 2010, School Board meeting and prohibiting him from using a public employee's name during his comments; (2) failing to publish notice of the June 14, 2010, School Board meeting as required by the OMA; (3) prohibiting Ritchie from attending the July 12, 2010, meeting; (4) preventing Ritchie from attending and/or speaking at the September 27, 2010, School Board meeting; and (5) preventing Ritchie from attending and/or speaking at the October 25, 2010, School Board meeting. (2d Am. Compl. ¶ 149a.-e.)

### a.

Defendants contend that the claims against Disler and Kerr must be dismissed because they are not proper defendants in a claim under Section 13. As noted above, Section 13 authorizes a lawsuit against "[a] public official who intentionally violates the [OMA]." M.C.L. § 15.273(1). It is undisputed that Disler and Kerr, as Superintendents of the School District, were not members of the School Board. Although the OMA does not define the term "public official," a school district superintendent is usually considered a "public official" as the term is commonly understood. *See Ridenour v. Bd. of Educ. of the City of Dearborn Sch. Dist.*, 111 Mich. App. 798, 805-06, 314 N.W.2d 760, 764 (1981). The question is whether, for purposes of the OMA, a superintendent can be a "public official" without being a member of a "public body."

---

[8] Defendants also contend that Ritchie fails to allege facts supporting his allegations of historical violations. While some of these allegations lack specific facts, others are supported by facts alleged elsewhere in the pleading. In any event, the Court does not view these allegations as essential to state a claim, although they may have some bearing on the propriety of injunctive relief.

"The primary goal in statutory construction is to ascertain and give effect to the Legislature's intent." *Bureau of Worker's & Unemployment Comp. v. Detroit Med. Ctr.*, 267 Mich. App. 500, 504, 705 N.W.2d 524, 527 (2005) (per curiam).  A court must construe a statute reasonably, in light of its purpose. *Draprop Corp. v. City of Ann Arbor*, 247 Mich. App. 410, 415, 636 N.W.2d 787, 789-90 (2001) (per curiam).  The court must begin with the language of the statute itself.  "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v. Home-Owners Ins. Co.*, 490 Mich. 145, 156, 802 N.W.2d 281, 289 (2011) (footnotes omitted).  "Identical terms in different provisions of the same act should be construed identically." *The Cadle Co. v. City of Kentwood*, 285 Mich. App. 240, 249, 776 N.W.2d 145, 154 (2009) (per curiam).

Defendants contend that the OMA is directed at "public bodies," such as the School Board, and that the action authorized by Section 13 against "public officials" who intentionally violate the OMA is limited to public officials who are members of public bodies.  Defendants cite *People v. Whitney*, 228 Mich. App. 230, 578 N.W.2d 329 (1998), as support for their argument.  *Whitney* dealt with a criminal prosecution under Section 12 of the OMA, M.C.L. § 15.272, which makes an intentional violation by a "public official" a misdemeanor offense.  In defining the elements of the offense, the court stated that the prosecutor must prove:  "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." *Id.* at 253, 578 N.W.2d at 340.  Although the court did not conduct an extensive analysis of the statute, it purported to apply the plain meaning of the pertinent language. *See id.*

Although *Whitney* involved the criminal provision of the OMA, both Section 12 and its civil counterpart, Section 13, use the same "public official" language.  Moreover, the *Whitney* court's

conclusion that a defendant must be "a member of a public" body is consistent with the purpose the OMA, which is to ensure public access to official decision-making of public bodies. In this regard, Section 11, M.C.L. § 15.271, authorizes a person to sue a public body for noncompliance, while Sections 12 and 13 authorize criminal and civil actions against the individual public body members for intentional violations. Accordingly, the Court concludes that Section 13, like Section 12, applies only to members of public bodies.

Citing a footnote in *Whitney*, Ritchie asserts that his claims against Disler and Kerr can survive dismissal. The footnote states:

> Although only a public official may directly commit the crime of intentionally violating the OMA, we point out that this would not preclude the conviction of a nonpublic official of this crime based on aiding and abetting in an appropriate case where the nonpublic official intentionally or knowingly aided a public official in intentionally violating the OMA.

*Id.* at 253 n.14, 578 N.W.2d at 340 n.14. Even if aiding and abetting liability may be asserted in a civil case, Ritchie's claims against Disler and Kerr are based on direct violations by those Defendants rather than violations of others. Thus, the OMA Section 13 claims against Disler and Kerr will be dismissed.

**b.**

Defendants next contend that Ritchie's Section 13 claims must be dismissed because Ritchie fails to allege sufficient facts to show that Defendant Iveson intentionally violated the OMA. Defendants note that to impose liability under Section 13, Ritchie must show that Iveson had the specific intent to violate the OMA. In *Whitney*, the court observed that "as an essential element of the crime of intentionally violating the OMA, an offender must have a subjective desire to violate the OMA or knowledge that the offender is committing an act violative of the OMA." *Id.* at 255-56, 578 N.W.2d at 341. The Court agrees with Defendants as to all aspects of Ritchie's claim against

Iveson except the portion based on the May 24, 2010, meeting, as to which Ritchie alleges that Iveson cut him off and prevented him from speaking, which would violate Section 3(5) of the OMA. As for the remaining aspects, Ritchie fails to allege any facts suggesting that Iveson did anything to intentionally violate the OMA in connection with the other incidents. For example, Ritchie alleges that Disler, not Iveson, approved the CPD officer's order and threat of arrest to Ritchie on June 11, 2010. Similarly, regarding the September 27 and October 25, 2010, meetings, Ritchie alleges that Kerr, not Iveson, requested the CPD officers to remove Ritchie. In fact, Ritchie does not even mention Iveson's name in his allegations relating to those meetings. Therefore, the Court will dismiss Ritchie's Section 13 claim against Iveson, except with regard to the May 24 meeting.[9]

### 3. Michigan Constitution

Defendants argue that Ritchie's claim for violation of the Michigan Constitution in Count X should be dismissed because damages are not available under the Michigan Constitution in a suit against a municipality or an individual defendant. The Court agrees. In *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423 (2000), the Michigan Supreme Court said that its decision in *Smith v. Department of Public Health*, 428 Mich. 540, 410 N.W.2d 749 (1987), "provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee." *Id.* at 335, 612 N.W.2d at 426. The court noted that the issue in *Smith* was whether such a remedy should be inferred against the state, which is not subject to liability under 42 U.S.C. § 1983. *Id.* at 335-36, 612 N.W.2d at 426. The court said that the concerns of a lack of remedy against the state in a § 1983 action were not present in a case against a municipality or an individual because a plaintiff may sue such parties in state or federal

---

[9] Because the Court has concluded that Ritchie cannot assert a Section 13 claim against Kerr and that Ritchie has failed to allege facts showing that Iveson intentionally violated the OMA in connection with the October 25 meeting, the Court need not address Defendants' statute of limitations argument relating to the October 25 meeting.

court under § 1983.  *See id.* at 337, 612 N.W.2d at 427.  In the instant case, Ritchie sues local governmental bodies and individuals, not the state,  and thus has a remedy under § 1983.  Therefore, he may not assert a claim against Defendants under the Michigan Constitution.  *See HRSS, Inc. v. Wayne Cnty. Treasurer*, 279 F. Supp. 2d 846, 851 (E.D. Mich. 2003) (noting that under *Jones* no damages remedy was available because the plaintiff had another avenue of relief against the county and its officials, namely an action under § 1983); *Darden v. City of Ann Arbor*, No. 227063, 2002 WL 410209, at *1 (Mich Ct. App. Mar. 15, 2002) (per curiam) ("Here, plaintiff sought damages for an alleged violation of the Michigan Constitution by a municipality and employees of the municipality, and plaintiff's complaint does not allege a cause of action under § 1983.  Therefore, pursuant to the holding in *Jones*, plaintiff's constitutional damage claim is barred and cannot be maintained against any of the defendants.").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss Ritchie's federal constitutional claims.  The motion will be granted with regard to the claims for injunctive relief and violation of procedural due process set forth in Counts V and VII as to all Defendants and with regard to the School District as to all claims except for Count II.  The motion will be denied in all other respects.

The Court will also grant in part and deny in part Defendants' motion to dismiss Ritchie's state-law claims.  The motion will be granted with regard to the malicious prosecution claim alleged in Count VIII against Defendant Kerr; the OMA claims alleged in Count IX against Defendants Disler and Kerr, and the claims against Iveson for the July 12, September 27, and October 25, 2010, meetings and the failure to publish notice of the June 14, 2010, meeting.  The motion will be denied

with regard to the OMA claim alleged in Count VI against the School Board and the OMA claim alleged in Count IX against Iveson regarding the May 24, 2010, meeting.

Finally, the Court will grant in part and deny in part Defendants' motion to dismiss the remaining issues and new issues.  The motion will be granted with regard to the claim for violation of the Michigan Constitution alleged in Count X and denied in all other respects.

An Order consistent with this Opinion will be entered.


Dated:  July 11, 2012                                     /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE